UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PC IRON, INC. d/b/a PACIFIC COAST IRON, INC.,<br><br>Defendant. | Case No.: 16-CV-2372-CAB(WVG)<br><br>**ORDER FOLLOWING DISCOVERY CONFERENCE** |

The Court convened a telephonic discovery conference on October 5, 2017 and heard argument on multiple discovery disputes. Attorney Ross Poole appeared for Defendant, attorney Connie Liem appeared for Plaintiff EEOC, and attorney Mehrdad Bokhour appeared for Intervener Elsa Perez. Having heard argument and considered the parties' written submissions, the Court rules as set forth below.[1]

---

[1] The Clerk of Court is directed to file the parties' written submissions.

1. **CEO Anderson's Physical Presence at Intervener Perez's Deposition**

In light of Plaintiff's counsel's representations describing Perez's recent and ongoing medical issues, which impact her physically and mentally, the Court finds it appropriate to establish reasonable accommodations in order to allow Perez's deposition to occur such that all parties' interests are protected. The Court accordingly enters the following conditions and terms upon the taking of Perez's deposition pursuant to its authority under Federal Rule of Civil Procedure 26(c)(1)(B) & (E).[2] Should Defendant continue to wish to depose Perez, the following terms and conditions shall govern:

    a. Anderson shall arrive before Perez's arrival at the facility where the deposition is to be taken. Anderson shall occupy a room other than the room where Perez's deposition is to be taken and close the door. Anderson shall remain in that room with the door closed for the duration of the time Perez is on the premises.

    b. The room in which Anderson will remain shall be equipped with one-way videoconferencing equipment that streams both the audio and video of the deposition to Anderson in real time with sufficient quality and clarity to allow both Anderson and counsel to meaningfully participate.

    c. Defense counsel may wear a telephone-connected headset with a direct link to Anderson, who may communicate with counsel via headset. Defense counsel may take as many breaks he deems necessary to confer with Anderson—both via headset and in person outside of the deposition room.

---

[2] The Rules expressly permit the Court to order that a "deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4); *see also Kaseberg v. Conaco, LLC*, 2016 U.S. Dist. LEXIS 111767, at *15-18 (S.D. Cal. Aug. 19, 2016) (Bartick, J.) (permitting videoconference deposition to save expense on travel costs); *Lopez v. CIT Bank, N.A.*, 2015 U.S. Dist. LEXIS 176575, at *5 (N.D. Cal. Dec. 18, 2015) (same); *Balu v. Costa Crociere S.P.A.*, 2011 U.S. Dist. LEXIS 85299, at *4 (S.D. Fla. Aug. 3, 2011) (noting "depositions are now readily taken inexpensively by internet video (e.g., Skype) or through somewhat more expensive, but still efficient, video conferencing facilities.").

d. The cost of the accommodations above shall be borne by Plaintiff EEOC, Intervener Perez, or both. The EEOC and Perez may allocate the costs amongst themselves in whatever fashion they agree.

Defendant's argument that Anderson is being excluded from the deposition is unfounded. With the above electronic accommodations, Anderson will be "virtually" present in the deposition room as closely as practicality and the competing circumstances allow. He may listen to Perez's testimony as though he were in the same room. He may visually observe Perez as though he were in the same room. He may communicate with his attorney as though he were sitting next to counsel. And counsel may leave the deposition room and confer with Anderson if necessary.

Counsel's concerns over his potential inability to conduct the deposition with Anderson speaking in his ear is also unfounded. Even if Anderson were in the same room, counsel would necessarily break from questioning to confer with Anderson if Anderson were to whisper in his ear. Counsel would not forge on with questioning with Anderson whispering to him; he would take a break and listen to Anderson. Thus, there is no meaningful difference with respect to this concern between Anderson being in the same room or in another room while communicating with counsel. The conditions above allow Anderson full and meaningful participation in Perez's deposition while also providing some accommodations for Perez.

Defendant's argument that the Court's Order will set a precedent for excluding Anderson from trial in this case is also unfounded. This Court's Order applies to the limited context of Perez's deposition. This Order in no manner binds The Honorable Cathy A. Bencivengo at trial. As defense counsel acknowledged, the environment of a deposition is materially different than inside a courthouse, where a judicial officer provides oversight and possibly comfort to Perez. Simply stated, this Court's Order has zero bearing on whether Anderson will or will not be able to attend the trial in this case, which is a wholly separate proceeding than a deposition.

## 2. Depositions of Angel Lopez and Anjelea Lopez

The Court is satisfied that Angel Lopez and Anjelea Lopez are properly subject to deposition in this case. Based on the detailed discussion with the parties on the record, Plaintiff's objection to these depositions is OVERRULED.

## 3. (a) Plaintiff's Request for Production of Documents (Set One) No. 4—Anderson's Notes;

## (b) Plaintiff's Request for Production of Documents (Set One) No. 4—Defendant's Financial Records From 2011 and 2012; and

## (c) Plaintiff's Request for Production of Documents (Set Two) No. 18—PC Iron's Current Financial Records

The Court declines to entertain these untimely discovery disputes. The Court's Chambers Rules clearly require that such disputes be presented to the Court for consideration within 30 days of the disputes arising. This requirement is also reiterated in the Scheduling Order issued in this case. (Doc. No. 11 at ¶ 7 ("All disputes concerning discovery shall be brought to the attention of the Magistrate Judge no later than thirty (30) days following the date upon which the event giving rise to the discovery dispute occurred.").) Additionally, Plaintiff's counsel is counsel of record on several cases pending before the Court, one of those cases is well into the discovery process, and that case has included a discovery dispute before this Court.[3] Plaintiff's counsel should have been

---

[3] At the April 14, 2017 Case Management Conference in this case, the Court advised the parties to immediately meet and confer once disputes arise and bring them to the Court's attention quickly if meet and confer efforts did not resolve the dispute. Moreover, Plaintiff's counsel in this case is also lead counsel in *U.S. Equal Employment Opportunity Commission v. CJMBS Pharmacies, Inc. et al.*, 16-CV-2410-MMA(WVG). When counsel participated in the March 23, 2017 Case Management Conference in that case, the Court concluded by expressly advising the parties: "If you bring a dispute to me that's more than 30 days old, then I'm not going to entertain it." Accordingly, Plaintiff's counsel has personally been on notice that failure to comply with the Court's 30-day deadline would lead to the result the Court reaches today. It is immaterial that the Court did not expressly warn Plaintiff's counsel in the instant case. The Court had expressly warned counsel a few

4

16-CV-2372-CAB(WVG)

familiar with the 30-day submission policy in the Chambers Rules and expressly stated in the Scheduling Order in this case. Counsel should also have been aware that the Court would not consider untimely disputes given the express admonition to that affect in the *CJMBS Pharmacies* case. Counsel nonetheless elected to not comply with the Court's explicit rules and orders, failed to heed the Court's admonition, and assumed the risk that the Court would follow through and enforce its rules.

Here, all three RFP disputes are untimely. With respect to RFP No. 18, the parties did not notify the Court of its existence until 40 days after the 30-day deadline had expired on August 17, 2017.[4] With respect to the dispute over Defendant's financial records from 2011 and 2012, which Plaintiff claims are responsive to RFP No. 4, the parties first notified the Court of its existence 105 days after the 30-day deadline expired.[5] Finally, with respect

---

weeks before the Case Management Conference in this case, counsel's knowledge of the Court's procedures transferred to the instant case, and that knowledge is properly imputed to Plaintiff through counsel. *See generally Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962); *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) ("A plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney. The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client.") (citations omitted); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (service on attorney constitutes notice to clients); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts.").

[4] Defendant served its response to RFP No. 18 on July 13, 2017. The response unequivocally stated that Defendant would "not comply with this request" based on the objections specified in the response. Given this firm declination to provide the documents, the 30-day clock began to run on July 13, 2017 and expired on August 12, 2017. The parties first presented this dispute to the Court on September 21, 2017—40 days late—through a joint telephone call to the undersigned's chambers.

[5] Defendant served its RFP No. 4 response on May 9, 2017. The RFP had asked for "all documents" related to Defendant's claim that Perez was "laid off." The RFP singled-out and specifically referenced paragraph 27 of Defendant's Answer, which made no mention of financial records or low business volume as the basis for Perez's layoff. Defendant

to the dispute over Anderson's personal notes, the parties missed the 30-day deadline by four days.[6] Accordingly, all three disputes are untimely and, as such, the Court will not entertain them.

Lest one misconstrue this result as unjust or draconian, the assignment of blame rightfully rests with the party that chose to ignore the Court's clearly-established and clearly-communicated rules and policies. If rules and orders are to mean anything, they must be enforced. This basic tenet of the practice of law is emphasized from the very beginning of attorneys' careers in law schools across the country. Even before they are attorneys, law students are admonished to either strictly abide by deadlines or seek extensions from the courts. Common sense dictates that doing neither of these is not an option or a choice that will end well—especially when the judge expressly informs the attorneys of the consequences. Attorneys ignore court-imposed rules and deadlines at their

---

accordingly had no reasonable expectation that this RFP requested financial documents. But Plaintiff, as the proponent of the RFP, surely knew what this RFP contemplated, as counsel now contends Defendant's financial documents are indeed responsive. (See Plaintiff's Discovery Statement at 7 ("Plaintiff also contends that Defendant's financial records are responsive to RFP 4 because they reflect Defendant's financial condition and low sale volume in late 2011-2012 . . . .").) Thus, when Plaintiff received Defendant's response to this RFP on May 9 and discovered the absence of financial records from 2011 and 2012, the dispute arose, and the 30-day deadline began to run, on that date. Accordingly, the deadline expired on June 8, 2017. Plaintiff first raised the dispute with Defendant on September 7, 2017. The parties first presented this dispute to the Court on September 21, 2017—105 days late—through the same joint telephone call mentioned above.

[6] Defendant served its response to RFP No. 4 on May 9, 2017. The 30-day timeline ordinarily would have begun to run on that day with respect to the dispute over Anderson's notes. However, Plaintiff did not learn of the notes' existence until Anderson's deposition on August 18, 2017. Thus, the timeline began to run on that date and expired on September 17, 2017. The parties first presented this dispute to the Court on September 21, 2017—4 days late—through the same joint telephone call mentioned above.

peril and at the peril of their clients. Indeed, the Ninth Circuit Court of Appeals has long expressed and endorsed this basic concept in the practice of law:

> [T]he district court needs the authority to manage the cases before it efficiently and effectively. In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. *Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders*, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2004) (emphasis added); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril.") (internal quotations and citation omitted).

As the Ninth Circuit stated, Plaintiff's counsel here risked paying a quite predictable price for failing to comply with the 30-day deadline she should have been aware of based on her experience with this Court, this Court's Chambers Rules, and the Scheduling Order issued in this case. By not complying with these directives, she assumed the risk that today's predictable result would follow and cannot credibly begrudge the Court for enforcing a rule that the Court has warned would be enforced in this manner.

**4.  Plaintiff's Request for Production of Documents (Set Two) No. 17—Employee Files of Vanessa Lopez**

Defendant's objections are SUSTAINED. Defendant hired Vanessa Lopez roughly five to six years after Perez ceased working at PC Iron. The Court finds Lopez is not an appropriate comparator in this case given this remoteness between her employment and Perez's employment. *See Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (stating that to "'be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in

all material respects.'") (quoting *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)); *see also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 546 (4th Cir. 2003) (concluding that employee identified by defendant as similarly situated to plaintiff to rebut inference of discrimination in defendant's failure to hire plaintiff, was not similarly situated to plaintiff where the employee "was not hired until several months after Bryant filed charges of racial discrimination"); *Lee v. Kansas City So. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."); *Tibbs v.Calvary United Methodist Church*, 505 Fed. Appx. 508, 515-16 (6th Cir. 2012) (concluding that "comparators were not similarly situated in that there is no temporal nexus to the events here" when disciplinary decisions concerning comparators were seven months to two years removed from plaintiff's termination); *Swann v. US Foods, Inc.*, 2015 U.S. Dist. LEXIS 78665, at *27 (E.D. Va. June 17, 2015) (five to ten year span too remote); *Hurst v. Dist. of Columbia*, 2015 U.S. Dist. LEXIS 33623, at *21 (D. Md. Mar. 16, 2015) (five year span too remote); *Epps v. First Energy Nuclear Operating Co.*, 2013 U.S. Dist. LEXIS 41140, at *60 (W.D. Pa. Mar. 25, 2013) (four-and-a-half-year span too remote).

The parties shall proceed in a manner not inconsistent with this Order.

**IT IS SO ORDERED.**

DATED: October 11, 2017

Hon. William V. Gallo
United States Magistrate Judge