UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>ELSA PEREZ<br><br>Plaintiff-Intervenor<br><br>v.<br><br>PC IRON, INC.,<br><br>Defendant. | Case No.: 16-cv-02372-CAB-(WVG)<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 48, 50, 51, 54] |

This matter is before the Court on a total of four motions for partial summary judgment. The motions have been fully briefed, and the Court deems them suitable for submission without oral argument. Each motion is addressed below.

**I.　Background**

Plaintiff-Intervenor Elsa Perez worked for Defendant P.C. Iron, Inc. ("PCI") between 2003 and 2011[1] in the position of Assistant Office Manager. Her job

---

[1] Perez left PCI for another job in 2006, and PCI rehired her in 2007.

responsibilities included answering the phone, bookkeeping, filing, and general clerical work. [Doc. No. 54-5 at 16.] In February 2011, Perez became pregnant. According to Perez and Plaintiff Equal Employment Opportunity Commission ("EEOC"), PCI's Chief Executive Officer Jerry Anderson and Office Manager Marlene Suits subjected her to a hostile work environment on the basis of her pregnancy. During her deposition, Perez was asked: "Has anyone at PC Iron ever made any comments to you that you believe were inappropriate?" [Doc. No. 50-3 at 11.] In response, she said that Anderson and Suits made between 5 and 20 inappropriate comments between 2003 and 2011 when she worked at PCI. [Doc. No. 50-3 at 12-15.] She attributed "six or more" such comments to 2011. [Doc. No. 50-3 at 18.] However, she was only able to provide details about the following comments that occurred in 2011 during her pregnancy:

- When Perez told Anderson and Suits in March 2011 that she was pregnant, Suits "said that it was a stupid idea; that [Perez] shouldn't be having any more kids since [she] was a single mom already with two kids." [Doc. No. 50-3 at 16, 22.]

- While at work in June or July 2011, Perez discovered that she was bleeding while in the restroom. When she told Suits, Suits "seemed like she didn't believe" Perez. Perez then went to the hospital, and while she was there, Suits kept calling her asking when Perez would be coming back to work. [Doc. No. 50-3 at 17, 23.]

- In June or July 2011, Suits asked Perez questions about her maternity leave and when they looked up how much leave Perez was entitled to, Suits told Perez, "why would [she] need that much time if all [she] d[id] was sit on [her] butt all day and don't do nothing, that [she] didn't need that much time off. And [Suits] would ask [Perez] constantly what [her] plan was because [Suits] didn't want to be left holding the bag. So [Suits] wanted to know what [Perez] was going to do with [her] baby when the baby was born." [Doc. No. 50-3 at 20, 24.]

- In June or July 2011, Suits told Perez that she would not be allowed to work part-time and that she would have to find someone to take her baby to appointments because PCI was not going to let Perez leave all the time. [Doc. No. 50-3 at 20-21, 24-25.]

At her deposition, Perez was unable to remember any other inappropriate comments made by PCI in 2011. [Doc. No. 50-3 at 22, 25.]

Perez's last day of work before maternity leave was September 28, 2011. [Doc. No. 50-3 at 30.] She was scheduled to return to work on December 12, 2011. At the end of November or beginning of December 2011, Suits called Perez to confirm that Perez intended to return to work at the conclusion of her maternity leave. According to Perez, Suits said that she needed to know for sure because PCI wanted to hire the temporary employee who had been filling in while Perez was on leave. [Doc. No. 50-3 at 30.] When Perez confirmed her intent to return, Suits told her that she needed to have childcare in place. [*Id.* at 31.]

On or around Monday, December 5th, Perez went to PCI's office to ask Suits to complete some forms that would help Perez get childcare through a low-income program at the YMCA. [*Id.* at 31-32.] Perez told Suits that she needed the forms by Wednesday, December 7th. In response, Suits told Perez that "she was trying to run a business and that she would try to have it done for [Perez] by Wednesday." [*Id.* at 32-33.] Perez called Suits the next day to see if she had completed the forms, and Suits told her that she had not, but that she would try to have it done by Wednesday. [*Id.* at 33.] According to Perez, on Friday, December 9th, Suits called and told her that she "didn't need to return back to work that following Monday; that [Perez] was being let go because [Suits] liked the temp better; that [Suits] was doing [Perez] a favor by letting [Perez] stay home to be home with [Perez's] baby]." [*Id.* at 34.]

On August 24, 2012, Perez filed a charge of discrimination with the EEOC. [Doc. No. 50-3 at 38.] On the same day, the California Department of Fair Employment and Housing ("DFEH") issued a notice to PCI and Perez that Perez's complaint was referred

by the EEOC and that the EEOC would be responsible for processing the complaint. [Doc. No. 51-3 at 47.] The DFEH's notice also notified Perez that it was her right-to-sue notice, and any civil action "must be brought within one year from the date of this notice," but that "this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint." [*Id.*]

On June 1, 2016, after conducting an investigation, the EEOC issued a letter of determination to PCI that stated:

> The Commission finds that there is reasonable cause to believe that the Charging Party was discharged because of her sex (female, pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> During the course of the investigation, the Commission found evidence that the Charging Party was subjected to a hostile work environment because of her sex (female, pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended. During the course of the investigation, the Commission also found evidence of commingling of medical information in Charging Party's personnel file.
>
> The Commission finds reasonable cause to believe that Respondent subjected the Charging Party to a hostile work environment because of her sex (female, pregnancy). The Commission also finds reasonable cause to believe that the Respondent failed to maintain confidential medical records in a separate medical file, i.e., commingling of medical information with personnel files, in violation of 29 C.F.R. § 1630.14(b)(1) and the ADA.

[Doc. No. 51-3 at 49.] After conciliation efforts between the EEOC and PCI were unsuccessful, the EEOC filed the complaint in this matter on September 9, 2016. [Doc. No. 1.] On December 15, 2016, the EEOC filed a first amended complaint (the "FAC"), which remains the operative complaint, asserting claims for a hostile work environment and discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, based on PCI's treatment of and discharge of Perez due to her pregnancy. [Doc. No. 5.]

On August 1, 2017, Perez filed a motion to intervene [Doc. No. 12], and the Court granted the motion on August 31, 2017 [Doc. No. 19]. On September 5, 2017, Perez filed her intervenor complaint asserting, in addition to the two Title VII claims in the FAC, six state law claims: (1) discrimination based on pregnancy; (2) sex discrimination; (3)

harassment/hostile work environment; (4) failure to prevent discrimination and harassment; (5) wrongful discharge; and (6) intentional infliction of emotional distress. [Doc. No. 20.]

Four summary judgment motions are currently pending. PCI moves for summary judgment on the EEOC's Title VII hostile work environment claim on the grounds that it is time-barred. PCI also moves for summary judgment on Perez's Title VII hostile work environment claim and her six state law claims on the grounds that they are time-barred. The EEOC moves for summary judgment on eleven of PCI's affirmative defenses. Finally, Perez moves for summary judgment on her wrongful discharge claim.

## II. Legal Standards on Summary Judgment

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. PCI's Motion for Partial Summary Judgment Against EEOC

PCI argues that it is entitled to summary judgment on the EEOC's hostile work environment claim because Perez did not file her charge within the period required by the statute. Pursuant to Title VII, an aggrieved party must file a charge with the EEOC either

180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (hereinafter, "*Amtrak*"). Courts have found that because California's DFEH has a work-share agreement with the EEOC, the 300 day period applies to claims in California. *See Tumbling v. Merced Irrigation Dist.*, No. CV F 08-1801 LJO DLB, 2010 WL 11450406, at *5 (E.D. Cal. Sept. 27, 2010). Neither party argues to the contrary here.

PCI argues that Perez's charge to the EEOC was untimely with respect to the EEOC's Title VII hostile work environment claim. "In order for [a hostile work environment] charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Amtrak*, 536 U.S. at 118. The "court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Amtrak*, 536 U.S. at 120.

Here, Perez filed her charge on August 24, 2012. The date 300 days before August 24, 2012, is October 29, 2011. Perez's only contact with PCI after October 29, 2011, consisted of: (1) Suits' telephone call on or around December 2, 2011, asking if Perez intended to return to work at the end of her maternity leave; (2) Perez's visit to PCI's offices on December 5, 2011, to ask Suits to complete forms for low-income childcare; (3) Perez's telephone call to Suits on December 6, 2011, to ask if Suits had completed the forms; and (4) Suits' telephone call on December 9, 2011, notifying Perez that she was being terminated. Suits' inquiry about Perez's return from maternity leave and her failure to immediately complete Perez's childcare forms are not discriminatory or abusive acts and did not interfere with the conditions of her employment. *Brooks v. City of San Mateo*, 229

F.3d 917, 923 (9th Cir. 2000) ("A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed."). Regardless of Perez's subjective perception of her December 2011 interactions with Suits, viewed objectively, none of these acts could form part of any "actionable hostile work environment practice" that Perez allegedly experienced while working at PCI before going on maternity leave. *Id.* (stating that to prevail on a hostile work environment claim, "[t]he working environment must both subjectively and objectively be perceived as abusive.") (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). As a result, because none of the other acts about which Perez and the EEOC complain as constituting a hostile work environment occurred within 300 days of Perez filing her charge with the EEOC, Perez's Title VII hostile work environment charge to the EEOC was untimely. Accordingly, PCI's motion for summary judgment on the EEOC's hostile work environment claim is granted.

### IV. PCI's Motion for Partial Summary Judgment Against Perez

PCI moves for summary judgment against Perez on her Title VII hostile work environment claim on the same grounds as its motion against the EEOC. The above analysis as to the untimeliness of the Title VII hostile work environment claim is equally applicable to Perez's identical claim, so PCI is entitled to summary judgment on that claim in Perez's intervenor complaint as well.

PCI also moves for summary judgment on Perez's six California state law claims on the grounds that they are time-barred. The timeliness of the six state law claims is addressed below.

#### A. Section 12960 Limitations Period

PCI first argues that Perez's state law claims for harassment and failure to prevent harassment are time-barred because Perez did not timely file her administrative charge. Pursuant California' Fair Employment and Housing Act ("FEHA"), a complaint must be filed with the DFEH within one year of the date of the alleged unlawful practice. Cal. Gov.

Code § 12960(d). With respect to the timeliness of Perez's FEHA harassment charge,[2] the analysis is similar to the Title VII claim insofar as acts that constitute part of the harassment must have occurred within the limitations period. *See generally Davis v. California Dep't of Corr. & Rehab.*, 484 F. App'x 124, 130 (9th Cir. 2012) (citing to the principles of *Amtrak* while discussing the timeliness of a sexual harassment charge under Title VII and FEHA); *Hastie v. Home Depot U.S.A., Inc.*, No. SACV16993JLSDFMX, 2016 WL 4414770, at *4 (C.D. Cal. Aug. 18, 2016) (noting that "it is well-established that 'California courts consistently look to Title VII for guidance in interpreting FEHA.'") (quoting *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1172 (9th Cir. 2001)). The primary difference in the analysis here is that the limitations period extends back one year from Perez's initial administrative complaint instead of 300 days. Thus, the question is whether any actionable harassment occurred after August 24, 2011, which was one year before Perez made her initial charge with the EEOC.

As discussed above, none of Perez's interactions with PCI while she was on maternity leave were harassing, so just as these interactions do not make her Title VII hostile work environment claim timely, they do not save her FEHA harassment claim either. Because these are the only acts by PCI that Perez recalled in her deposition that occurred after August 24, 2011, Perez's initial administrative charge was not timely with respect to any harassment that may have occurred before August 24, 2011.

Third party witness Elaine Rossi's declaration about PCI's treatment of Perez in September 2011 does not change this result. Rossi's declaration recounts comments allegedly made by Suits to Rossi about Perez, as well as comments that Rossi recalls Suits allegedly making directly to Perez while Rossi temporarily worked at PCI in September

---

[2] PCI appears to contend in its opposition to the EEOC's summary judgment motion that Perez never made a charge of hostile work environment with the EEOC. [Doc. No. 63 at 10.] Although the specific allegations in Perez's charge may support this argument, because PCI did not make the argument in PCI's summary judgment motion, the Court assumes as true that Perez's original charge encompassed a Title VII hostile work environment or FEHA harassment claim.

8

2011. [Doc. No. 48-4.] Perez, however, did not recall any of the events described in Rossi's declaration, or at a minimum did not consider them to be inappropriate, when asked at her deposition to describe any comments made by someone at PCI that Perez believed were inappropriate. [Doc. No. 50-3 at 22, 25.] That Perez did not recall or perceive these comments as hostile or abusive means she cannot use those comments as part of the harassment pattern to bring her claim within the applicable limitations period. *See generally Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006) ("[A] plaintiff who does not perceive the workplace as hostile or abusive will not prevail, even if it objectively is so.").

In sum, all of the acts that Perez identified as inappropriate occurred more than one year before she filed her initial charge with the EEOC. Her harassment claim is therefore time-barred pursuant to California Government Code section 12960. As a result, her derivative failure to prevent harassment claim is also time-barred. *See Tumbling*, 2010 WL 11450406, at *19 (holding that failure to prevent harassment claim was untimely to the extent it was based on claims of discriminatory conduct that were untimely).

## B. Section 12965 Limitations Period

PCI also argues that all of Perez's FEHA claims[3] are time-barred because Perez did not file her complaint in this action within the time period set by FEHA. California Government Code § 12965(b) states that a "person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint within one year from the date of [the right-to-sue] notice." *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324 n.1 (9th Cir. 1987). Considering that Perez received her DFEH right-to-sue letter on August 24, 2012 [Doc. No. 51-3 at 47], and did not move to intervene in this lawsuit until August 1, 2017 [Doc.

---

[3] These claims include the harassment and failure to prevent harassment claims discussed in the previous section, as well as Perez's claims for discrimination based on pregnancy, discrimination based on sex, and wrongful discharge.

9

16-cv-02372-CAB-(WVG)

No. 12], there is no dispute that Perez did not bring a civil action against PCI within one year. Thus, absent any tolling of this statute of limitations, Perez's claim would be time-barred.

That being said, two types of tolling applied here to give Perez additional time to bring her claims. Yet even with the tolling of this limitations period, Perez's FEHA claims are still untimely. First, the one-year limitations period is tolled pursuant to section 12965 itself when the following three requirements are met:

> (A) A charge of discrimination or harassment is timely filed concurrently with the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing.
>
> (B) The investigation of the charge is deferred by the Department of Fair Employment and Housing to the Equal Employment Opportunity Commission.
>
> (C) A right-to-sue notice is issued to the person claiming to be aggrieved upon deferral of the charge by the Department of Fair Employment and Housing to the Equal Employment Opportunity Commission.

Cal. Gov. Code § 12965(d)(1). However, "[t]he time for commencing an action for which the statute of limitations is tolled under paragraph (1) expires when the federal right-to-sue period to commence a civil action expires, or one year from the date of the right-to-sue notice by the Department of Fair Employment and Housing, whichever is later." Cal. Gov. Code § 12965(d)(2). Notably, this language states when the right to commence an action expires, and not when the tolling period expires. If it was the latter, a plaintiff would have a year from the end of the tolling period to file suit.[4]

PCI does not dispute that the one-year statute of limitations was tolled pursuant to section 12965(d)(1).[5] Nor can there be any dispute that more than one year passed from

---

[4] The decision on which Perez relies misstates section 12965(b)(2) in this manner, holding that "the tolling period set forth in Section 12965(b)(1) [sic] ends when the federal right to sue period to commence a civil action expires . . . ." *E.E.O.C. v. Kovacevich "5" Farms*, No. 1:06 CV 0165 OWW TAG, 2006 WL 3060149, at *8 (E.D. Cal. Oct. 27, 2006).

[5] More precisely, PCI's position with respect to the harassment and failure to prevent harassment claims is that Section 12965(d)(1) tolling does not apply because Perez did not timely file her charge, and the

10

16-cv-02372-CAB-(WVG)

the date of the DFEH's right-to-sue notice. Thus, the question before the Court is on what date "the federal right-to-sue period to commence a civil action" expired, because that is the date on which Perez's time for commencing an action on her FEHA claims expired. *See* Cal. Gov. Code § 12965(d)(2).

PCI argues that the federal right-to-sue period expired when the EEOC filed its complaint in this action based on the Supreme Court's pronouncement that when "the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002). Perez, meanwhile, argues that the federal right-to-sue period did not expire until her ability to intervene as a matter of right in a lawsuit filed by the EEOC expired.

PCI's argument is more persuasive. When the EEOC filed its complaint here, Perez no longer had a right to commence a civil action on her Title VII claims. Thus, pursuant to section 12965(d)(2), her time for commencing a lawsuit on her FEHA claims, to the extent those claims were tolled pursuant to 12965(d)(1), expired on that date as well. Accordingly, Perez's claims were untimely even with the statutory tolling provided by section 12965(d)(1). The statute of limitations analysis, however, does not end here.

Perez's FEHA claims were also subject to equitable tolling during the period of the EEOC's investigation. *See Mitchell v. California Dept. of Public Health*, 1 Cal. App. 5th 1000, 1008 (Cal. Ct. App. 2016). This raises the question of when this equitable tolling period expired. Most of the cases addressing the application of equitable tolling of FEHA claims while Title VII claims are being investigated by the EEOC involve circumstances when the EEOC issued a right-to-sue letter and did not file a lawsuit itself, and several of these decisions were issued before the California legislature enacted section 12965(d)(2). *See, e.g., Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1325 (9th Cir. 1987) (holding

---

Court agrees with that position. *See* Section IV.A., *supra*. Thus, with respect to these two claims, PCI argues in the alternative that they are time-barred pursuant to Section 12965.

that 12965(d)(1) limitations period was equitably tolled "until . . . the EEOC completed its investigation and issued its right-to-sue letter"); *Downs v. Dept. of Water & Power*, 58 Cal. App. 4th 1093, 1102 (Cal. Ct. App. 1997) (holding that "the one-year period to bring a FEHA action is equitably tolled during the pendency of the EEOC investigation until a right-to-sue letter from the EEOC is received"). In fact, the legislature's enactment of the tolling requirements of section 12965(d)(2) was intended to codify the holding in *Downs*. Cal. Gov. Code § 12965(d)(3). None of these cases considered when the equitable tolling period should end when, instead of issuing a right-to-sue letter, the EEOC files suit itself, as happened here.

"Equitable tolling—extending the deadline for a filing because of an event or circumstance that deprives the filer, through no fault of his own, of the full period accorded by the statute—seeks to vindicate what might be considered the genuine intent of the statute." *McQuiggin v. Perkins*, 569 U.S. 383, 409 (2013). Thus, when a plaintiff is pursuing a remedy in another forum, the statute of limitations is equitably tolled when three factors are satisfied: "(1) timely notice to defendants in filing the first claim; (2) lack of prejudice to defendants in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiffs in filing the second claim." *Downs*, 58 Cal. App. 4th at 1100; *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (same).

In her opposition, Perez conflates the statutory tolling period in section 12965(d)(2) with the "judicially created doctrine" of equitable tolling. *See Mitchell*, 1 Cal. App. 5th at 1008 (holding that the plaintiff was entitled to equitable tolling despite not being entitled to statutory tolling pursuant to section 12965(d)(2)). These are separate tolling periods with separate requirements. Section 12965(d)(2) "grants the plaintiff who complies with the federal right-to-sue period the benefit of statutory tolling without having to meet the equitable tolling requirement of reasonable and good faith conduct." *Id.* at 1010. As discussed above, the period to file suit in light of the tolling provided by section 12965(d)(2) ended when the EEOC filed this lawsuit. On the other hand, to be entitled to

12

16-cv-02372-CAB-(WVG)

equitable tolling, Perez is required to demonstrate that she acted reasonably and in good faith. She has not satisfied this requirement.

The equitable tolling doctrine is applied "sparingly" and in "extreme cases" on a "case-by-case analysis." *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992). Thus, "[c]ourts have been generally unforgiving . . . when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Id.* at 268. Because the DFEH's right-to-sue letter stated that the one year statute of limitations in section 12965(d)(1) "will be tolled during the pendency of the EEOC's investigation of your complaint," it was reasonable for Perez to wait until to the end of the EEOC's investigation to file a lawsuit. But this language from the right-to-sue letter does not justify or explain Perez's wait of almost a year after the EEOC filed this lawsuit to intervene and state her FEHA claims for the first time. The mere fact that the Court granted Perez's motion to intervene after this delay does not make the delay any more reasonable for equitable tolling purposes. That Perez was able to intervene and assert her claims does not mean that those claims are not time-barred.

There is no justification for Perez's delay here. Because Perez did not act reasonably and in good faith by waiting more than a year after the EEOC issued its letter of determination and almost eleven months after the EEOC filed its complaint to assert her FEHA claims, the doctrine of equitable tolling does not save her FEHA claims from being time-barred. Accordingly, PCI is entitled to summary judgment on Perez's state law claims for sex discrimination, pregnancy discrimination, harassment, failure to prevent discrimination, and wrongful discharge on the grounds that they are time-barred.

### C. Intentional Infliction of Emotional Distress Claim

PCI argues that Perez's intentional infliction of emotional distress claim is subject to a separate two-year statute of limitations that is not subject to any tolling like Perez's FEHA claims. Perez's opposition brief does not mention this claim or dispute that it is time-barred, so any such argument is waived. Regardless, for all the reasons discussed above, Perez's delay in raising this claim undermines any argument for equitable tolling.

13

16-cv-02372-CAB-(WVG)

Accordingly, Perez's intentional infliction of emotional distress claim is time-barred as well.

## V. EEOC's Motion for Summary Judgment

The EEOC moves for summary judgment on eleven of PCI's eighteen affirmative defenses. Because the Court has granted summary judgment for PCI on the Title VII hostile work environment claim, the EEOC's motion is denied as moot with respect to the applicability of these defenses to that claim. Thus, the discussion below primarily focuses on whether the EEOC is entitled to summary judgment on these defenses with respect to the Title VII discrimination claim.

### A. First (Failure to State a Claim), Second (Estoppel), Third (Waiver), Seventeenth (Unjust Enrichment), and Eighteenth (Additional Affirmative Defenses) Affirmative Defenses

The EEOC moves for summary judgment on each of these defenses. Based on its opposition brief, PCI appears to have abandoned these defenses because it did not make any arguments against their dismissal. Accordingly, these defenses are dismissed.

### B. Fourth Affirmative Defense – Statute of Limitations

The EEOC moves for summary judgment on this defense, arguing that it is not subject to any statute of limitations restriction on its ability to file a lawsuit in federal court. The EEOC is correct insofar as there is no time limit on when the EEOC may institute a lawsuit *provided the initial charge was timely filed*. *See Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 366 (1977) (noting that "the benchmark, for purposes of statute of limitations, is . . . the commencement of the proceeding before the administrative body"). As discussed above, Perez did not timely file her charge to the extent she was claiming a hostile work environment. In light of the entry of summary judgment in favor of PCI on the hostile work environment claim, the EEOC's motion is moot to the extent it argues for summary judgment on this defense of that claim. However, because PCI did not oppose the motion with respect to the applicability of this defense to

the remaining Title VII discrimination claim, the EEOC is entitled to summary judgment on this defense as it applies to that claim.

### C. Seventh Affirmative Defense – Conciliation Failure

With its seventh affirmative defense, PCI asserts that the EEOC's claims are barred "[t]o the extent that [it] failed to fulfill its statutory duties to conciliate its claims brought under Title VII and the Pregnancy Discrimination Act." [Doc. No. 6 at 7.] When the EEOC finds "reasonable cause" to think that a discrimination charge has merit, it must first 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.'" *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1649 (2015) (quoting 42 U.S.C. § 2000e-5(b)). The scope of the Court's review of whether the EEOC complied with this requirement is "narrow" and the EEOC has "extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case." *Id*. "The appropriate scope of review enforces the statute's requirements . . . that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—but goes no further." *Id.* at 1653. "[T]he Commission may use in each case whatever 'informal' means of 'conference, conciliation, and persuasion' it deems appropriate. And the EEOC alone decides whether in the end to make an agreement or resort to litigation: The Commission may sue whenever 'unable to secure' terms 'acceptable *to the Commission*.'" *Id.* at 1654 (citing 42 U.S.C. § 2000e-5(f)(1)) (internal citation omitted; *emphasis* added in *Mach Mining*).

Here, the EEOC provided a letter of determination stating that there was reasonable cause to believe that Perez "was discharged because of her sex (female, pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended." [Doc. No. 48-8 at 2.] PCI argues that this letter is impermissibly vague and does not "properly describe[] both what [PCI] has done and which employees (or what class of employees) have suffered as a result." *Mach Mining*, 135 S.Ct. at 1656. As to the hostile work environment claim, PCI has a point. The letter of determination simply states that there was "evidence that [Perez] was subjected to a hostile work environment." [Doc. No. 48-8 at 2.] This vague and

conclusory statement is particularly inadequate considering that Perez's charge of discrimination does not allege a hostile work environment or make any allegations other than that she was terminated because of her sex and pregnancy. [Doc. No. 48-5 at 3.] With its motion, the EEOC offers no evidence that PCI was aware of any charge of a hostile work environment or that the EEOC was investigating such a claim. The conclusion that evidence of a hostile work environment was found did not serve to inform PCI of what allegations of a hostile work environment were made. Nevertheless, these deficiencies are harmless based on the entry of summary judgment on the hostile work environment claim above.

With respect to the discrimination claim, the letter of determination is hardly more informative. However, because PCI was already aware of Perez's allegations based on the charge of discrimination, and based on evidence that PCI in fact made an offer to resolve the matter in response [Doc. No. 48-10], the EEOC's efforts to conciliate the discrimination charge survives the "relatively barebones review" required of the Court. Accordingly, this defense is dismissed as to the discrimination claim.

### D. Ninth Affirmative Defense – Failure to Exhaust Administrative Remedies

With this affirmative defense, PCI contends that the claims in the FAC are barred Perez's failure to exhaust her administrative remedies. In its opposition brief, PCI argues only that this defense is valid as to the hostile work environment claim because Perez did not make any allegations of a hostile work environment in her charge and the EEOC did not include any specific factual allegations of a hostile work environment in its letter of determination. However, because PCI does not make any argument as to the applicability of this defense to the Title VII discrimination claim, it is dismissed as to that claim.

### E. Eleventh Affirmative Defense – At-Will Employment; Sixteenth Affirmative Defense – California Labor Code Violations

With these defenses, PCI asserts that Perez was an at-will employee, and that she did not satisfy statutory obligations imposed by California labor laws. In its opposition,

PCI asserts that these defenses are valid because there is a dispute of fact as to PCI's reasons for terminating Perez. Whether Perez was an at-will employee is entirely irrelevant to this dispute, and arguments and evidence supporting non-discriminatory grounds for terminating Perez are not affirmative defenses because the burden rests with the EEOC to prove that PCI is liable for discrimination. Accordingly, these defenses are dismissed.

Notwithstanding the foregoing, the burden remains on the EEOC to prove that PCI terminated her because of her sex or pregnancy. PCI is free to present evidence and argue at trial that it did not terminate Perez, or that it terminated her for a non-discriminatory reason. In other words, the dismissal of these affirmative defenses should have little impact on PCI's ability to defend against the EEOC's discrimination claim at trial.

### F. Fifteenth Affirmative Defense – Bona Fide Occupational Qualification

With this defense, PCI asserts that "any decision by [PCI] to take adverse employment action against Ms. Perez, if any, was lawful because Defendant was entitled to consider Ms. Perez's inability to perform essential job duties as a job requirement." [Doc. No. 6 at 9.] In its opposition brief, PCI argues that this defense is valid because the position she held before going on maternity leave was eliminated and its duties were consolidated into another position for which Perez was not qualified.

As stated in the previous section, PCI is free to argue and present evidence of non-discriminatory reasons for any termination of Perez and need not assert an affirmative defense to do so. Moreover, despite the label in the answer, it appears that PCI is not actually asserting a bona fide occupational qualification ("BFOQ") defense. The BFOQ defense allows an employer "to discriminate on the basis of 'religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.'" *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) (quoting 42 U.S.C. §2000e-2(e)(1)). PCI is not arguing that Perez's pregnancy or sex precluded her from being

qualified for her job or that for other reasons it was permitted to discriminate against her *because* of her pregnancy or sex. Accordingly, this affirmative defense is dismissed, but once again its dismissal should have little impact on PCI's defense against the EEOC's discrimination claim at trial.

## VI. Perez's Motion for Summary Judgment

Because all of Perez's state law claims are time-barred, her motion for summary judgment on her wrongful discharge claim is denied.

## VII. Disposition

In light of the foregoing, it is hereby **ORDERED** as follows:

1. PCI's motion for partial summary judgment against the EEOC [Doc. No. 50] is **GRANTED**;

2. PCI's motion for partial summary judgment against Perez [Doc. No. 51] is **GRANTED**;

3. The EEOC's motion for summary judgment against PCI [Doc. No. 48] is **DENIED AS MOOT** with respect to the applicability of PCI's affirmative defenses to the EEOC's hostile work environment claim, and **GRANTED** with respect to the applicability of PCI's affirmative defenses to the discrimination claim; and

4. Perez's motion for partial summary judgment [Doc. No. 54] is **DENIED**.

It is further **ORDERED** that a status conference is set for **May 14, 2018** at **2:30 p.m.** in Courtroom 4C.

It is **SO ORDERED**.

Dated: May 1, 2018

Hon. Cathy Ann Bencivengo
United States District Judge